IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| **KEVIN D. KENT, in his capacity as** | : | |
| **Receiver for Broad Reach Capital, LP;** | : | |
| **Broad Reach Partners, LLC; Bristol** | : | |
| **Advisors, LLC; BA Smith & Associates** | : | |
| **LLC; Bristol Advisors LP; CV** | : | |
| **Brokerage, Inc.; Clearview Distribution** | : | **Civil Action** |
| **Services LLC; CV International** | : | |
| **Investments Limited; CV International** | : | **NO. _____** |
| **Investments PLC; CV Investments LLC;** | : | |
| **CV Lending LLC; CV Minerals LLC;** | : | |
| **BD of Louisiana, LLC; TA 1, LLC;** | : | **Jury Trial Demanded** |
| **FFCC Ventures, LLC; Prico Market** | : | |
| **LLC; GovAdv Funding LLC; Elm Street** | : | |
| **Investments LLC; Investment Consulting** | : | |
| **LLC; and Tempo Resources LLC** | : | |
| **1500 Market Street, Centre Square** | : | |
| **West Tower, Suite 3900** | : | |
| **Philadelphia, PA 19102-2100,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD C. GALVIN** | : | |
| **4645 E. Lake Avenue** | : | |
| **Centennial, CO 80121** | : | |
| **AND** | : | |
| **GALVIN INVESTMENT COMPANY,** | : | |
| **LLC a/k/a Galvin Investments Company,** | : | |
| **LLC and Galvin Investments, LLC and** | : | |
| **Galvin Investment Group** | : | |
| **4645 E. Lake Avenue** | : | |
| **Centennial, CO 80121** | : | |
| **AND** | : | |
| **GILMAN METALS COMPANY, LLC** | : | |
| **4645 E. Lake Avenue** | : | |

**Centennial, CO 80121**                          **:**
        **AND**                          **:**
**GALVIN METALS COMPANY, LLC**     **:**
**4645 E. Lake Avenue**                     **:**
**Centennial, CO 80121**                     **:**
        **AND**                          **:**
**RG COASTAL LLC**                            **:**
**4645 E. Lake Avenue**                     **:**
**Centennial, CO 80121,**                   **:**
                                 **:**
           **Defendants**               **:**

_____

## COMPLAINT

## INTRODUCTION

1.     This action is brought pursuant to a June 29, 2020 Order (the "Receivership Order") issued by the Honorable Madeline Cox Arleo, United States District Judge for the District of New Jersey, in the underlying action brought by the Securities and Exchange Commission ("SEC" or the "Commission") against Brenda Smith ("Smith"); Broad Reach Capital, LP ("Broad Reach Capital", "Broad Reach Fund" or the "Fund"); Broad Reach Partners, LLC ("Partners"); and Bristol Advisors, LLC ("Bristol") (collectively, the "Smith Defendants"), captioned *Securities and Exchange Commission v. Brenda Smith*, *et al.*, Civil Action No. 2:19-cv-17213 (MCA) (D.N.J.) (the "SEC Action"). True and correct copies of the SEC Complaint and the Receivership Order are attached hereto as Exhibit "A" and Exhibit "B," respectively.

2.    The SEC Action arises out of an investment advisory fraud in which, *inter alia*, the Smith Defendants solicited over \$100 million from investors for purported investment in sophisticated securities trading strategies. In reality, Smith took the vast majority of these funds for unrelated companies, to pay back other investors, and for personal use. And, in 2019, confronted with at least one investor trying to redeem its investment, Smith created a fictitious valuation of assets backed by false claims that she held billions of dollars in assets through a company she owned.

3.    The fraud was perpetrated by Smith Defendants directly and through numerous affiliated entities owned or controlled by one or more of the Smith Defendants (referred to in the Receivership Order as "Affiliated Entities").

4.    The Smith Defendants and Affiliated Entities operated out of offices in West Conshohocken, Pennsylvania, and, upon information and belief, all or a majority of their conduct as set forth in this Complaint occurred in the Commonwealth of Pennsylvania.

5.    Brenda Smith is also being criminally prosecuted for her conduct. The government filed its criminal complaint against Brenda Smith on August 22, 2019 in the matter of *USA v. Smith*, No. 2:20-cr-00475-MCA-1 (D.N.J.) (the "Criminal Action"). The SEC Action is ongoing, but currently subject to a stay pending the completion of the Criminal Action. Under the terms of the stay order, all orders

relating to the Receivership and all powers granted to the Receiver remain in full force and effect during the pendency of the stay.

6.      Plaintiff, Kevin D. Kent, was appointed under the Receivership Order to serve as the Receiver ("Receiver" or "Plaintiff") for the purpose of marshaling and preserving all assets, including, *inter alia*, monies, securities, choses in action, and properties of the Smith Defendants and the Affiliated Entities to maximize the recovery available to investors defrauded by Smith. This includes assets that (1) are attributable to assets derived from investors or clients of Smith Defendants; (2) are held in constructive trust for the Smith Defendants; (3) were fraudulently transferred by the Smith Defendants; and/or (4) may otherwise be included as assets of the Smith Defendants or Affiliated Entities (collectively "the Receivership Estate" or "Receivership Assets"). *See* Ex. "B", Whereas ¶ 3.

7.      In this regard, the Receivership Order provides that "Kevin D. Kent, Esq., of the firm Conrad O'Brien, is hereby appointed to serve without bond as receiver . . . to assume control of, marshal, pursue, and preserve the Receivership Assets." *See* Ex. "B", ¶ 5.

8.      In the Receivership Order, the Court took exclusive jurisdiction and possession of the Receivership Assets, including, but not limited to, the assets of the following Smith Defendants and Affiliated Entities: Broad Reach Capital, LP; Broad Reach Partners, LLC; Bristol Advisors, LLC; BA Smith & Associates LLC;

Bristol Advisors LP; CV Brokerage, Inc.; Clearview Distribution Services LLC; CV International Investments Limited; CV International Investments PLC; CV Investments LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC; FFCC Ventures, LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investments, LLC; Investment Consulting LLC and Tempo Resources LLC (collectively, "Receivership Parties" or "Receivership Entities"). *See* Ex. "B", ¶ 1.

9.      Plaintiff, Kevin D. Kent, in his capacity as Receiver for, *inter alia*, the Receivership Assets and Receivership Parties, by and through his counsel, hereby asserts this action to recover, and avoid the fraudulent transfer(s) of, Receivership Assets made by certain of the Receivership Parties to and/or on behalf of the Defendants, under theories of fraudulent transfer, unjust enrichment, breach of contract, and breach of fiduciary duty. The Receiver also demands an accounting from Defendants, including but not limited to all funds transferred by the Receivership Parties to them, for their benefit, on their behalf, or at their request, in whatever form.

## PARTIES

10.      Under the Receivership Order, Receiver is a representative of this Court with the full powers of an equity receiver. *See* Ex. "B".

11.     The Receivership Order authorizes the Receiver to institute legal proceedings on behalf of and for the benefit of the Receivership Estate as may be necessary or appropriate in order to recover, conserve or maximize Receivership Assets, including, *inter alia,* actions seeking legal and equitable relief, to avoid fraudulent transfers, to collect debts, for disgorgement of profits, for creation of a constructive trust, for asset turnover, for rescission and restitution, and such other relief as this Court may deem necessary to enforce the Receivership Order. *See* Ex. "B", ¶¶ 50-51.

12.     Defendant, Richard C. Galvin ("Galvin") is an individual with a business or home address of 4645 E. Lake Avenue, Centennial, CO 80121, who is the sole and/or controlling owner, manager, founder, director, member and/or registered agent, and is essentially the alter-ego, of the other defendants named herein, and personally engaged in all of the conduct of these defendants as alleged in this Complaint. Specifically, upon information and belief, Galvin is the CEO and sole member of Galvin Investment Company, LLC, the managing member of Gilman Metals Company LLC, the manager of Galvin Metals Company, LLC and the managing member of RG Coastal LLC. *See*, *e.g.,* Declaration of Richard Galvin, attached hereto as Exhibit "C".

13.     Defendant, Galvin Investment Company, LLC a/k/a Galvin Investments Company, LLC, Galvin Investments, LLC and Galvin Investment

6

Group ("GIC"), is a legal entity with a registered business address of 4645 E. Lake Avenue, Centennial, CO 80121.

14.     Defendant, Gilman Metals Company, LLC ("Gilman") is a legal entity with a registered business address of 4645 E. Lake Avenue, Centennial, CO 80121.

15.     Defendant, Galvin Metals Company, LLC ("Galvin Metals") is a legal entity with a registered business address of 4645 E. Lake Avenue, Centennial, CO 80121.

16.     Defendant, RG Coastal LLC ("RG Coastal) is a legal entity with a registered business address at 4645 E. Lake Avenue, Centennial, CO 80121.

17.     The Receiver filed a Motion with this Court to initiate litigation against the Defendants named herein on June 29, 2021.

## JURISDICTION AND VENUE

18.     Federal courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by the federal securities laws pursuant to 15 U.S.C. §§ 77v(a) and 78aa, laws at issue in the SEC Action.

19.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367, as Receiver brings this action to accomplish the objectives of the Receivership Order entered in the SEC Action, and as such this action forms part of the same case or controversy as the SEC Action.

20.     Under the Receivership Order, this Court retains exclusive jurisdiction over and possession of the Receivership Assets.

21.     This Court also has jurisdiction over this action under 28 U.S.C. §§ 754 and 1692. Receiver has filed copies of the Receivership Order with the United States District Court in each federal judicial district, including the District of Colorado. As a result of those filings, the Receiver is vested with complete control over any real or personal property of the Receivership Estate located in any federal judicial district, including the District of Colorado, with the right to take possession of such property.

22.     Venue is proper in this Court under 28 U.S.C. §§ 754, 1391(b), and 1692.

## FACTUAL BACKGROUND

### The Fraudulent Scheme

23.     The SEC Action arises out of an investment advisory fraud that Smith Defendants operated from at least February 2016 through 2019, in connection with which Smith Defendants offered investors limited partnership interests in the Fund.

24.     Since the Fund's inception, Smith raised approximately $100 million from investors, and investors are still owed approximately $60 million in principal.

25.     To solicit and retain investors, the Smith Defendants represented that the funds would be invested in highly liquid securities through various

8

sophisticated and profitable trading strategies with consistently high returns, including those that they were uniquely positioned to pursue because of their access to the trading floor of the Philadelphia Stock Exchange.

26.     In reality, only a small fraction of investor money was actually used for these trading strategies. The vast majority of these investments were moved through bank accounts Smith controlled, funneled into unrelated companies, used to pay back other investors, or utilized for Smith's personal use.

27.     Smith's fraudulent misappropriation and use of investors' funds caused the Receivership Parties to suffer harm, which the Receiver seeks to redress under Court authority.

28.     Smith was able to conceal her fraudulent misappropriation and mishandling of investor funds through numerous misrepresentations to existing and prospective investors and others, including, *inter alia*, by generating and providing false performance statements and fabricated documents regarding the Fund's assets and valuations.

<u>**Transfer of Receivership Assets to Defendants**</u>

29.     Over the following series of transactions, Brenda Smith transferred $606,000.00 in Receivership Assets to Defendants Galvin and/or GIC:

      a.  On or about April 20, 2016, Brenda Smith caused $100,000.00 to be transferred to Defendants, Galvin and/or GIC, from

Receivership Party, Investment Consulting, LLC ("Investment Consulting").

b.  On or about April 29, 2016, Brenda Smith caused $100,000.00 to be transferred to Defendants, Galvin and/or GIC, from Investment Consulting.

c.  On or about May 9, 2016, Brenda Smith caused $400,000.00 to be transferred to Defendants, Galvin and/or GIC, from Investment Consulting.

d.  On or about September 19, 2016, Brenda Smith caused $6,000.00 to be transferred to Defendants, Galvin and/or GIC, from Investment Consulting.

30.    There are additional transactions in connection with which Galvin and/or GIC received funds transferred by Smith, which are still under further investigation and review and which are subject to the Receiver's demand for an accounting. This includes, *inter alia*, transfers identified in a sworn Declaration signed by Galvin on August 14, 2019 (the "Galvin Declaration") which was filed in connection with an unrelated lawsuit GIC previously filed against Smith in the United States District Court for the District of Colorado, which was subsequently dismissed for lack of jurisdiction, including, *inter alia*, a transfer of $200,000 on

April 18, 2016 and a transfer of $1.4 million on July 12, 2016. A copy of the Galvin Declaration is attached hereto as Exhibit "C".

31.     The Galvin Declaration states that Smith sent these funds to Galvin and/or GIC for GIC's "general business operations", for "several GIC projects", and that they were used, in part, to pay certain financial obligations of GIC and Galvin Metals pursuant to contracts they entered into with other entities. *See* Ex. "C", ¶¶ 7, 8 13.

32.     Upon information and belief, these payments were intended to be loans. *See, e.g.,* Ex. "C", Ex. 4.

33.     Financial records and books belonging to the Receivership Parties and/or Smith provide no indication that any of the funds paid to Galvin and GIC were ever repaid to Smith or the Receivership Parties.

34.     Upon information and belief, Investment Consulting, LLC did not receive anything in exchange for these transfers.

35.     For example, the Receiver's investigation has revealed that Smith did not receive any ownership interest in GIC in connection with these payments, and the Galvin Declaration confirms that Galvin is its sole member. *See* Ex. "C", ¶ 2.

36.     The transferred funds were derived directly or indirectly from investments made by investors in the Fund.

37.     The Receiver has demanded that Galvin and GIC return these assets. They have refused to do so.

## Transfer of Receivership Assets to MAC Business Services on Behalf of Defendants, Galvin, GIC and Gilman

38.     On or about May 13, 2016, Gilman entered into a Business Loan Agreement with PA Metals, LLC ("PA Metals"), along with other associated agreements, pursuant to which Gilman was the Borrower on a Loan in the amount of $535,000.00 ("Gilman Loan").

39.     The Gilman Loan was subject to an interest rate of ten percent (10%) per annum, and required monthly interest payments of $4,458.33.

40.     The Gilman Loan was guaranteed by GIC and Galvin personally, and was collateralized by two barrels of gold ore concentrate pursuant to a Security Agreement entered into between the parties to the Gilman Loan.

41.     MAC Business Services served as a Broker which was to receive payment in connection with the Gilman Loan.

42.     Upon information and belief, Smith made the required payments on the Gilman Loan, which also included late fees and other related penalties, for the benefit and on behalf of Gilman, Galvin and GIC, because Galvin did not have the money to do so at the time, and in order to prevent the Lenders from taking Galvin's ore concentrate. The Receiver has identified the following payments,

12

totaling $677,737.48 made to MAC Business Services in repayment of the Gilman
Loan:

  a. On or about August 10, 2016, Brenda Smith caused $15,000.00 to
be transferred to MAC Business Services from Investment
Consulting for amounts due on the Gilman Loan.

  b. On or about October 7, 2016, Brenda Smith caused $9,362.49 to be
transferred to MAC Business Services from Investment Consulting
for amounts due on the Gilman Loan.

  c. On or about January 9, 2017, Brenda Smith caused $13,374.99 to
be transferred to MAC Business Services from Investment
Consulting for amounts due on the Gilman Loan.

  d. On or about January 20, 2017, Brenda Smith caused $535,500.00
to be transferred to MAC Business Services from Investment
Consulting for amounts due on the Gilman Loan.

  e. On or about February 21, 2017, Brenda Smith caused $80,000.00
to be transferred to MAC Business Services from Investment
Consulting for amounts due from Gilman, Galvin and GIC
pursuant to a February 15, 2017 Loan Satisfaction Agreement
these defendants entered into with PA Metals, as full and final
payment of their obligations under the Business Loan Agreement,

promissory note, and other related instruments executed on or
about May 13, 2016.

f.  On or about March 6, 2017, Brenda Smith caused an additional
$25,000.00 to be transferred to MAC Business Services from SEC
Defendant and Receivership Party Broad Reach Capital LP, which,
upon information and belief, was done at the request of and/or on
behalf of Defendants, GIC, Galvin and Gilman.

43.    Upon information and belief, these payments were intended to be
loans.

44.    Financial records and books belonging to the Receivership Parties
and/or Smith provide no indication that any of these funds were ever repaid to
Smith or the Receivership Parties.

45.    Upon information and belief, Investment Consulting, LLC did not
receive anything in exchange for the payments it made on behalf of GIC and
Galvin.

46.    The transferred funds were derived directly or indirectly from
investments made by investors in the Fund.

47.    The Receiver has demanded that Defendants return these assets. They
have refused to do so.

14

## <u>Transfer of Receivership Assets to Other Entities for the Benefit of Defendants</u>

48.    Over the following series of transactions, Brenda Smith transferred $700,000.00 from Receivership Party Investment Consulting to two businesses: Lucky June Limited, Hong Kong ("Lucky June") and Renewable Industries Middle East Ltd. ("Renewable Industries"). Upon information and belief, these payments were made by Smith to satisfy obligations of Defendants Galvin and/or GIC:

      a.  On or about April 18, 2016, Brenda Smith caused $200,000.00 to be transferred to Lucky June Limited, Hong Kong ("Lucky June") from Investment Consulting at the request and/or on behalf of, Defendants, GIC and Galvin.

      b.  On or about April 21, 2016, Brenda Smith caused $250,000.00 to be transferred to Renewable Industries Middle East Ltd. ("Renewable Industries") from Investment Consulting, at the request and/or on behalf of, Defendants, GIC and Galvin.

      c.  On or about April 28, 2016, Brenda Smith caused $225,000.00 to be transferred to Lucky June from Investment Consulting, at the request of and/or on behalf of, Defendants, GIC and Galvin.

d. On or about April 28, 2016, Brenda Smith caused $25,000.00 to be transferred to Renewable Industries from Investment Consulting at the request and/or on behalf of, Defendants, GIC and Galvin.

49. Upon information and belief, these payments made to Lucky June and Renewable Industries were made on behalf of Galvin and GIC, in connection with funding obligations of GIC pursuant to and/or arising out of certain contracts it entered into with Renewable Industries.

50. Upon information and belief, Investment Consulting did not receive anything in exchange for making these payments on behalf of Galvin and GIC.

51. Over the following series of transactions, Brenda Smith transferred $93,900.00 from Receivership Party Investment Consulting to an individual named Dawn M. Shuey and a business identified as Plasma Energy Design, LLC ("Plasma Energy Design"). Upon information and belief, these payments were made by Smith to satisfy obligations of Defendants Galvin and/or GIC:

a. On or about August 16, 2016, Brenda Smith caused $13,900.00 to be transferred to Dawn M. Shuey from Investment Consulting at the request and/or on behalf of, Defendants, GIC and Galvin.

b. On or about November 17, 2016, Brenda Smith caused $30,000.00 to be transferred to Plasma Energy Design from Investment

Consulting at the request and/or on behalf of, Defendants, GIC and
Galvin.

c. On or about December 28, 2016, Brenda Smith caused $50,000.00
to be transferred to Plasma Energy Design from Investment
Consulting at the request and/or on behalf of, Defendants, GIC and
Galvin.

52.     Upon information and belief, these payments to Dawn M. Shuey and
Plasma Energy Design were made on behalf of Galvin and GIC, in connection with
funding obligations of GIC pursuant to and/or arising out of certain contracts it
entered into with Plasma Energy Design.

53.     Upon information and belief, these payments were intended to be
loans.

54.     Financial records and books belonging to the Receivership Parties
and/or Smith provide no indication that any of these funds were ever repaid to
Smith or the Receivership Parties.

55.     Upon information and belief, Investment Consulting did not receive
anything in exchange for these transfers.

56.     The transferred funds were derived directly or indirectly from
investments made by investors in the Fund.

57.     The Receiver requested that Defendants provide further information and documentation regarding certain of these transfers. They have failed to do so.

## 2019 Stout Development, LLC

58.     2019 Stout Development, LLC ("2019 Stout") is a Colorado limited liability company which was created to purchase and develop property located at 2019 Stout Street, Denver, Colorado ("the Property" or " 2019 Stout Property" or "Stout Street Property").

59.     2019 Stout's January 11, 2017 Operating Agreement ("2019 Stout Operating Agreement" or "Operating Agreement") named Defendant Galvin as its manager and Mainspring, LLC ("Mainspring"), TRB Consulting, LLC ("TRB") and Defendant, RG Coastal as members. RG Coastal held a 70% interest in the company, TRB a 10% interest, and Mainspring a 20% interest. A copy of the Operating Agreement is attached hereto as Exhibit "D".

60.     Neither Smith, nor any Receivership Party, was a member of 2019 Stout pursuant to the Operating Agreement. *See* Ex. "D".

61.     The Operating Agreement further provides that no manager may be removed without written consent of the member(s) of 2019 Stout, and that the resignation of the Manager requires at least thirty (30) days prior written notice to the Members. *See* Ex. "D" ¶¶ 5(b), 6.

18

62.     Additionally, the Operating Agreement provides that a vote of the Members holding at least a majority of the outstanding Class A Units and a majority of the outstanding Class B units is required prior to "entering into any sale, license or other disposition of all or substantially all of the Company's assets." *See* Ex. "D", ¶ 7.

63.     On or about January 24, 2017, Brenda Smith caused $103,000.00 to be transferred to James B. Dunlap, Attorney at Law, from Broad Reach Capital, on behalf of 2019 Stout and its members, to cover, upon information and belief, expenses related to the purchase of the Property.

64.     On or about January 24, 2017, Brenda Smith caused $1,916,132.79 to be transferred to First American Title Insurance Company from Broad Reach Capital, on behalf of 2019 Stout and its members, to fund the purchase of the Property.

65.     On or about February 28, 2017, Brenda Smith caused $936,104.61 to be transferred to 2019 Stout from Broad Reach Capital, to enable 2019 Stout and its members to buy-out 2019 Stout's Options members who previously invested in its development project.

66.     Upon information and belief, Brenda Smith caused a total of $3,100,000.00 in Receivership Assets to be paid to and on behalf of 2019 Stout and

its members; however, the recipient of the remaining $144,762.60 in payments has
not yet been identified by the Receiver.

67. Upon information and belief, there are no written agreements
memorializing the terms on which Brenda Smith had Broad Reach Capital make
these payments to/on behalf of 2019 Stout and its members.

68. At the time these transfers were made, upon information and belief,
neither Smith, nor any Receivership Party, held any ownership interest in 2019
Stout or the 2019 Stout Property, and Broad Reach Capital did not appear to
receive anything in exchange for making these payments.

69. On March 31, 2017, Smith allowed Receivership Party CV
Investments, LLC ("CVI") to enter into a Settlement Agreement (the "Settlement
Agreement") with RG Coastal, TRB, Mainspring, Galvin, 2019 Stout, and several
other parties. Galvin signed the Settlement Agreement individually, and on behalf
of RG Coastal and 2019 Stout as manager. A copy of the Settlement Agreement is
attached hereto as Exhibit "E".

70. Pursuant to the Settlement Agreement, RG Coastal transferred its
entire membership interest in 2019 Stout (the "RG Units") to CVI, Mainspring
transferred its entire membership interest in 2019 Stout (the "Mainspring Units") to
TRB, which were to be transferred to CVI immediately upon the signing of the
Settlement Agreement, and TRB transferred its entire ownership interest in 2019

Stout (the "TRB Units") to CVI, thereby leaving CVI as the sole member of 2019 Stout upon the execution of the Settlement Agreement. *See* Ex. "E", ¶ 1 (a, c-e).

71.     Pursuant to the Settlement Agreement, RG Coastal agreed to pay CVI $3,100,000.00 ("Stout Payment") no later than ninety (90) days after the effective date of the Settlement Agreement ("Stout Deadline"), but RG Coastal had the option to extend the deadline up to three (3) times and for one (1) month at a time, by paying at least $25,000.00, $35,000.00, and $50,000.00, respectively, during the first, second, and third option months, which payments would be applied to, and reduce the amount owed on, the Stout Payment. *See* Ex. "E", ¶ 1 (b).

72.     The Settlement Agreement provided that, automatically and immediately upon payment of the Stout Payment by RG Coastal to CVI, CVI would automatically and immediately transfer the RG Units to RG Coastal, and the Mainspring and TRB Units to TRB. *See* Ex. "E", ¶ 1 (b, d, e).

73.     The Settlement Agreement further required that RG Coastal and TRB promptly make all past due payments on Stout, and that RG Coastal and TRB maintain insurance on the assets owned by Stout, pay all taxes due by Stout, and pay all bills of Stout. RG Coastal was to remain liable for the costs of all bills, taxes and expenses not paid. *See* Ex. "E", 1 (i, j(ii)).

74.     Additionally, the Settlement Agreement provided that CVI was not to sell, trade, assign, transfer, convey, bargain or encumber the RG, TRB and

21

Mainspring Units in 2019 Stout, or exercise the voting powers associated therewith for any purpose, during the Interim Period between the date of the execution of the Settlement Agreement and Stout Deadline (the "Interim Period"). *See* Ex. "E", 1 (j)(i)).

75.     Additionally, on March 31, 2017, RG Coastal issued a Secured Promissory Note to CVI (the "Promissory Note"), confirming, for value received, its unconditional promise to pay the principal sum of $3.1 million to CVI by June 29, 2017 (the "Maturity Date") and setting forth the terms of repayment consistent with the schedule set forth in the Settlement Agreement, including the option to extend three (3) times. A copy of the Promissory Note is attached hereto as Exhibit "F". *See* Ex. "F", ¶¶ 2, 3 (b).

76.     The Promissory Note provided that, in the event of a default, CVI may retain the equity in 2019 Stout transferred to it by RG Coastal and TRB. *See* Ex. "F", ¶¶ 5, 6.

77.     Upon information and belief, RG Coastal paid, or arranged for the payment of, the options payments to be sent to CVI's attorney, Andrew Hurni, to extend the Stout Deadline until approximately September 29, 2017.

78.     In the meantime, during the Interim Period –i.e., while Galvin remained manager of 2019 Stout, all membership units in 2019 Stout were held by

CVI, and while 2019 Stout had no eligible voting members—Galvin encumbered the Property with two deeds of trust without CVI's knowledge.

79.    More specifically, Galvin caused 2019 Stout to borrow $104,000.00 from John H. Moore Investment Co. LLC ("Moore") and issued a Borrower's Note to Moore on June 26, 2017 ("Moore Note"), which was secured by a June 26, 2017 Deed of Trust issued by 2019 Stout for the benefit of Moore ("Moore Deed of Trust"). A copy of the Deed of Trust is attached hereto as Exhibit "G".

80.    Upon information and belief, these funds, or at least a substantial portion thereof, were used by Galvin for unrelated business purposes.

81.    Galvin signed and executed the Moore Deed of Trust on behalf of 2019 Stout, as Manager. *See* Ex. "G".

82.    Pursuant to the terms of the Moore Note, the Moore Deed of Trust provided that the repayment of the principal balance of $104,000.00 would be subject to interest at the rate of eight (8%) percent per annum, with monthly payments of $666.67 to commence on August 1, 2017. *See* Ex. "G", ¶ 2.1

83.    If not sooner paid, the outstanding principal and accrued interest thereon were due and payable by July 1, 2018. *See* Ex. "G", ¶ 2.1.

84.    Then, on August 25, 2017, GIC borrowed $350,000.00 from Rodney Hopfe ("Hopfe"), and issued him a Promissory Note for repayment at an interest rate of eight percent (8%) per annum and with a total repayment amount of

23

$750,000.00, in connection with which he pledged one (1) barrel of mineral ore concentrate owned by GIC; and (2) a Promissory Note and Second Deed of Trust on the Property owned by 2019 Stout ("Hopfe Note"). A copy of the Hopfe Note is attached hereto as Exhibit "H".

85.    Upon information and belief, these funds, or at least a substantial portion thereof, were used for unrelated business purposes.

86.    The maturity date on the Hopfe Note was August 26, 2018. *See* Ex. "H".

87.    A Second Deed of Trust securing the Hopfe Promissory Note was issued by GIC to Hopfe on August 25, 2017, in order to secure, *inter alia*, the indebtedness evidenced by the Hopfe Promissory Note ("Hopfe Deed of Trust"). A copy of the Hopfe Deed of Trust is attached hereto as Exhibit "I".

88.    Galvin and RG Coastal failed to make the final payment of $2,990,000.00 due to CVI pursuant to the Settlement Agreement and Promissory Note by September 29, 2021.

89.    However, the Operating Agreement was not amended to reflect CVI's exclusive membership in 2019 Stout, and it was not amended to revoke Galvin's managerial role.

90.    On or about February 16, 2018, Hopfe filed a Complaint to Quiet Title of the 2019 Stout Property, styled *Hopfe v. Galvin Inv. Co. LLC et al.*, No. 2018-

cv-30594 (Co. Dist. Ct. Denver), because the Second Deed of Trust was erroneously granted by GIC, which had no ownership interest in the 2019 Stout Property ("Action to Quiet Title").

91.     On October 18, 2018, the Honorable Stephen M. Munsinger entered an order granting summary judgment in favor of Hopfe, finding, *inter alia*, that because Stout 2019's Operating Agreement names Galvin as manager, and his managerial authority was not revoked by the Settlement Agreement, he had the power to grant a security interest in the 2019 Stout Property. A copy of the Order granting Plaintiff's Amended Motion for Summary Judgment is attached hereto as Exhibit "J".

92.     The Court's Order quieted title and declared that the priority of interests in the Property were as follows: (1) the Moore Deed of Trust in the amount of $104,000; (2) the Hopfe deed of trust in the amount of $350,000.00; and (3) the remaining fee interest held by 2019 Stout. *See* Ex. "J".

93.     In the meantime, while the Action to Quiet Title was pending, Galvin caused 2019 Stout to default on the Moore Note he caused to be issued.

94.     More specifically, 2019 Stout failed to make payment on the principal and outstanding interest due under the Moore Note and Moore Deed of Trust on July 1, 2018.

95.     On or about October 11, 2018, Moore made a demand for foreclosure and caused a Notice of Sale and Notice of Rights to Cure or Redeem to be issued pursuant to the Moore Deed of Trust, as the $104,000.00 outstanding principal balance remained unpaid and due and owing.

96.     It is presently unknown to Receiver whether Moore was ultimately paid the amount due and owing under the Moore Note and, if so, by whom Moore was paid.

97.     Galvin and GIC likewise defaulted on their $750,000.00 repayment obligation due under the Hopfe Note by August 26, 2018.

98.     Thus, on December 7, 2018, Hopfe filed a complaint for judicial foreclosure, styled at *Hopfe v. 2019 Stout Development, LLC*, No. 2018-cv-34531 ("Hopfe Foreclosure Action").

99.     On May 21, 2019, the Court entered summary judgment and a decree of foreclosure in favor of Hopfe due to GIC's failure to pay the amounts due and owing under the Hopfe Note. A copy of the order and decree of foreclosure is attached hereto as Exhibit "K".

100.    The Court Ordered that the Sheriff sell the 2019 Stout Property, and apply the proceeds as follows: (a) first, to pay all fees, costs and expenses incurred in connection with the sale; (b) second, to pay Hopfe $750,000 in principal together with accrued interest on that amount from August 26, 2018, through the

date of sale, plus attorney's fees in the amount of \$141,286.00 and costs in the amount of \$4,125.18; and (c) finally, to pay any balance into the Registry of the Court, to be applied as the Court may direct. *See* Ex. "K".

101.    As a direct and proximate result of the conduct of Galvin and GIC, 2019 Stout lost its Property, i.e. substantially all of its assets, and CVI's interest in 2019 Stout under the Settlement Agreement and Promissory Note became effectively worthless.

102.    To put it simply, Receivership Parties provided the funds to purchase the Stout Street Property, and later took ownership of the company (2019 Stout) formed to hold title to the Stout Street Property when the RG Coastal failed to repay CVI. While Galvin had the ability to regain ownership of 2019 Stout by repaying CVI the \$3.1 million it was owed, he never did so. However, during the time he was given to repay CVI and reclaim ownership of 2019 Stout, he abused his position as the manager for 2019 Stout (in which he no longer had any ownership interest) by causing it to put up its only asset (the Stout Street Property) as collateral for loans that Galvin and GCI obtained, upon information and belief, for their own purposes and that did not benefit 2019 Stout. And when Galvin and GIC failed to repay the money they borrowed, their creditors sold the Stout Street Property in foreclosure. As a result, since RG Coastal and Galvin failed to repay CVI the \$3.1 million it was owed, CVI was left holding a company with no assets.

103.    The conduct of Galvin, as set forth above, including his issuance of two deeds of trust on the 2019 Stout Property during the Interim Period, including one to secure a loan issued to him and GIC, and his subsequent failure to repay those loans pursuant to the terms of those Notes, both as manager of 2019 Stout and individually and/or on behalf of GIC, thereby causing defaults on the Notes and the eventual foreclosure of the 2019 Stout Property, was not undertaken in good faith, and constitutes recklessness, willful misconduct, gross negligence, and a knowing and intentional breach of the 2019 Stout Operating Agreement as well as the implied covenant of good faith and fair dealing with respect to the Settlement Agreement.

104.    Upon information and belief, the payments made by Broad Reach Capital to and on behalf of 2019 Stout, and for the benefit of its members, including specifically RG Coastal, were intended to be loans.

105.    Financial records and books belonging to the Receivership Parties and/or Smith provide no indication that any of these funds were ever repaid to Smith or the Receivership Parties, potentially with the exception of the $110,000.00 options payments purportedly sent to CVI's counsel, Andrew Hurni.

106.    RG Coastal defaulted on its repayment obligations under the Promissory Note; and continues to owe CVI $2,990,000.00 under its terms.

28

107.   As a direct and proximate result of the conduct of Galvin and GIC as set forth above, the collateral which secured the Promissory Note has lost all meaningful value.

108.   Accordingly, the Receiver's investigation has revealed that nothing of equivalent value was received in exchange for the payments made by Broad Reach Capital to and/or on behalf of 2019 Stout, for the benefit of its members, including specifically RG Coastal.

109.   The transferred funds were derived directly or indirectly from investments made by investors in the Fund.

## Discovery of Claims

110.   Before his appointment, the Receiver could not have reasonably discovered any claims against Defendants.

111.   Further, after the Receiver's Appointment and after receiving notice of the Receivership Order, Galvin, through counsel, denied to the Receiver that he holds any assets or funds of the Receivership Parties or Ms. Smith.

112.   Any temporal limitations, statutory or otherwise, on Receiver's ability to bring the causes of action set forth in this Complaint are subject to equitable tolling as a result of, among other things, the discovery rule and the doctrine of fraudulent concealment.

## COUNT I (against All Defendants)
## ACTION TO AVOID FRAUDULENT AND VOIDABLE TRANSFERS

113.   Receiver hereby incorporates Paragraphs one (1) through one hundred twelve (112) of this Complaint as if set forth at length herein.

114.   As set forth in detail above, Receivership Parties Investment Consulting, LLC and Broad Reach Capital LP made payments and/or distributions to, for the benefit of, at the request of, and/or on behalf of, Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC in 2016 and 2017.

115.   All transfers of Investment Consulting, LLC and Broad Reach Capital LP to, for the benefit of, at the request of and/or on behalf of Defendants were fraudulent and voidable transfers within the meaning of the Pennsylvania Uniform Voidable Transactions Act, 12 Pa.C.S.A. § 5101, *et seq.* and/or the Colorado Uniform Fraudulent Transfer Act, C.R.S.A. § 38-8-101 *et seq.*

116.   Smith caused the transfer of assets to, for the benefit of, at the request of and/or on behalf of Defendants during the course of her operation of a fraudulent scheme.

117.   Because Smith operated Investment Consulting and Broad Reach Capital as part of a fraudulent investment scheme, all transfers of Investment Consulting and Broad Reach Capital's assets to, for the benefit of, at the request of

and/or on behalf of Defendants were made with actual intent to hinder, delay and/or defraud the Receivership Parties' creditors and/or debtors, and are fraudulent and voidable.

118.   When the transfers were made to, for the benefit of, at the request of and/or on behalf of Defendants, Smith was operating Investment Consulting and Broad Reach Capital as part of a fraudulent investment scheme intending to incur, or believing or reasonably believing that they would incur, debts beyond their ability to pay them as they became due.

119.   The Receivership Parties were insolvent or became insolvent shortly after and/or as a result of the transfers made and were unable to pay their debts as they became due.

120.   Defendants participated in the fraudulent transactions at issue as they received the benefit of the transfers, which money was used to pay for various expenses, obligations, and ownership and personal interests of Defendants.

121.   Defendants did not take the fraudulent transactions in good faith, and did not provide any reasonably equivalent value to the Receivership Parties or any subsequent transferee or obligee in exchange for these transfers.

122.   The Receiver is entitled to avoid the fraudulent transfers to inure to the benefit of the Receivership Estate and in order to maximize the recovery available to the defrauded investors.

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC, avoiding, setting aside, and requiring repayment of the net amount of the transfers made to them, at their request, for their benefit and/or on their behalf by Investment Consulting LLC and Broad Reach Capital LP, as well as an attachment or other appropriate remedy against the assets transferred or other property of Defendants. To the extent any of these funds have been used to acquire real or personal property in which Defendants claim an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets, or alternatively, recovery of the asset(s) purchased with the Receivership Assets. The Receiver also requests interests, costs, and such other and further relief as this Court may deem just and proper.

## COUNT II (against All Defendants)
## UNJUST ENRICHMENT

123.   Receiver hereby incorporates Paragraphs one (1) through one hundred twenty-two (122) of this Complaint as if set forth at length herein.

124.   The Receivership Parties conferred a benefit on Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC,

32

Galvin Metals Company, LLC and RG Coastal LLC by making the transfers set forth in detail herein.

125.    Defendants knowingly and voluntarily accepted and retained the benefits conferred upon them by the Receivership Parties.

126.    The circumstances are such that it would be inequitable and unjust for Defendants to retain the benefits conferred by the Receivership Parties without paying the Receiver the value thereof.

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC, in the amounts they were unjustly enriched, including through disgorgement of sums equal to these amounts. To the extent any of these funds have been used to acquire real or personal property in which Defendants claim an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets. The Receiver also requests interests, costs, and such other and further relief as this Court may deem just and proper.

## COUNT III (against RG Coastal LLC)
## BREACH OF CONTRACT

127. Receiver hereby incorporates Paragraphs one (1) through one hundred twenty-six (126) of this Complaint as if set forth at length herein.

128. Pursuant to the terms of the Settlement Agreement, RG Coastal promised to make payments in connection with the 2019 Stout Property, and was to be personally responsible for unmade payments. *See* Ex. "E".

129. By failing to make payments owed to Moore pursuant to the Moore Note executed by Galvin as manager of 2019 Stout, and which resulted in a deed of trust which encumbered the 2019 Stout Property, Galvin and RG Coastal breached the Settlement Agreement on July 1, 2018 (the due date of the Moore Note), as well as the Moore Note itself.

130. By failing to make payments owed to Rodney Hopfe pursuant to the Hopfe Note executed by Galvin which was the obligation of Galvin and GIC, and which resulted in a deed of trust which encumbered the 2019 Stout Property, Galvin and RG Coastal breached the Settlement Agreement on August 26, 2018 (the due date of the Hopfe Note), as well as the Hopfe Note itself.

131. By encumbering the 2019 Stout Property with two deeds of trust without the knowledge or authority of 2019 Stout's members, and then failing to re-pay the promissory notes accompanying those deeds of trust, thus resulting in

34

the foreclosure and loss of the 2019 Stout Property, Galvin and RG Coastal

breached the 2019 Stout Operating Agreement and further breached the implied

covenant of good faith and fair dealing of the Settlement Agreement.

132.   Additionally, RG Coastal is in breach of the $3.1 million promissory

note issued to CVI, by failing to make the final $2,990,000.00 payment to CVI. *See*

Ex. "H".

133.   RG Coastal and Galvin's breaches of these contracts have caused

direct financial harm to Receivership Party CV Investments, LLC, as set forth in

detail above.

WHEREFORE, Receiver requests this Court enter a judgment in his favor

and against Defendants, Richard C. Galvin and RG Coastal LLC, in the amount of

$2,990,000.00, together with interest, post-judgment interest, fees and costs as may

be allowed, and such other and further relief as the Court may deem just and

proper.

## COUNT IV (against Richard C. Galvin)
## BREACH OF FIDUCARY DUTY

134.   Receiver hereby incorporates Paragraphs one (1) through one hundred

thirty-three (133) of this Complaint as if set forth at length herein.

135.   At all material times, Galvin, as manager of 2019 Stout, owed a

fiduciary duty to 2019 Stout and its members.

136.  Galvin breached his fiduciary duty to CVI, by encumbering the 2019 Stout Property with two deeds of trust during the Interim Period without CVI's knowledge, while all membership units in 2019 Stout were held by CVI, and while 2019 Stout had no eligible voting members.

137.  Galvin's breach of these fiduciary duties continued when he failed to make the required payments due under the promissory notes accompanying the deeds of trust—including one which was the obligation of his entity GIC, and which he personally signed as CEO of GIC—thus causing the 2019 Stout Property to be lost through foreclosure, stripping 2019 Stout of all or most of its assets, and effectively eliminating the value of CVI's membership interest in 2019 Stout.

138.  Galvin's conduct in this regard was not taken in good faith, and constitutes recklessness, willful misconduct, gross negligence, and a knowing and intentional breach of the 2019 Stout Operating Agreement.

139.  Galvin's breaches of his fiduciary duties to 2019 Stout and its members resulted in direct financial harm to CV Investments, LLC.

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendant, Richard C. Galvin, for the damage he has caused to CV Investments, LLC as a result of his breaches of his fiduciary duties, together with interest, post-judgment interest, fees and costs as may be allowed, and such other and further relief as the Court may deem just and proper.

## COUNT V (against All Defendants)
## DEMAND FOR AN ACCOUNTING

140.    Receiver hereby incorporates Paragraphs one (1) through one hundred thirty-nine (139) of this Complaint as if set forth at length herein.

141.    The Receiver is the successor in interest to the Receivership Parties and has assumed all of their rights and obligations, including without limitation the right to collect amounts owing on purported loans made by the Receivership Parties.

142.    The Receiver has determined that Smith caused the transfer of in excess of $ 5 Million in Receivership Assets to, for the benefit of, at the request of, and/or on behalf of, Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC in 2016 and 2017, pursuant to the transactional history set forth above.

143.    The Receiver lacks the information to determine whether these were the only transfers made by Receivership Parties to, for the benefit of, at the request of, and/or on behalf of, Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC during Smith's operation of the fraudulent scheme.

144.    The Receiver lacks the information to determine whether all of the transfers set forth herein were truly intended as loans.

145.   The information necessary to determine the true nature of these transactions is wholly within the knowledge and control of Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC.

146.   The transactions in question occurred during the perpetration of a fraud, namely the fraudulent scheme operated by Smith through the Receivership Parties.

147.   The Receivership Order grants the Receiver the authority to demand an accounting from parties who engaged in transactions with the Receivership Parties and/or who may possess Receivership Assets.

148.   The Receiver has previously demanded that Defendants produce such records as to account for any and all transactions they engaged in with Receivership Parties.

149.   Despite such demands, Defendants have failed to comply and produce such records.

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Richard C. Galvin, Galvin Investment Company, LLC, Gilman Metals Company, LLC, Galvin Metals Company, LLC and RG Coastal LLC., requiring them to provide a full and accurate accounting of any and all assets received from, payments made on their behalf by, or transactions engaged in

with, the Smith Defendants and Receivership Parties, and additionally requests

interest, costs, and such other and further relief as this Court may deem just and

proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

demands that this case be tried to a jury.

Respectfully Submitted,

*s/ Robin S. Weiss* _____

Dated: 6/29/2021      Robin S. Weiss (N.J. ID. 018182011)
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: 215-864-9600
Fax: 215-864-9620
rweiss@conradobrien.com
*Attorney for Receiver, Kevin D. Kent, Esq.*